■ In the Matter of SALVATORE J. SCOTTO, Respondent, v BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF NEW YORK, ARTICLE II, Appellant.—Judgment, Supreme Court, New York County, entered March 9, 1979, which granted petitioner's CPLR article 78 petition and directed, *inter alia,* that the respondent board of trustees grant petitioner a service-connected accidental disability pension effective July 7, 1973, reversed, on the law, petition dismissed, and the determination of the board of

trustees reinstated, without costs. Petitioner, a now retired police officer, seeks in this CPLR article 78 proceeding review of respondent board of trustees determination denying for a second time, pursuant to the recommendation of the medical board, petitioner's application for an accidental disability pension. Respondent's earlier determination had been reversed by this court and the proceedings remanded to respondent for further consideration (Scotto v Cawley, 50 AD2d 733). Concluding that there was no credible medical evidence to support respondent's disapproval of the application, Special Term granted the petition and directed the board to grant petitioner a service-connected accident disability pension. Although there is evidence in the record supporting petitioner's application, and the medical board's statement of reasons for recommending its disapproval is awkwardly and obscurely phrased, we are not persuaded that the record does not disclose an adequate basis for the medical board's recommendation and the respondent's action. Accordingly, we reverse Special Term's order, dismiss the petition, and reinstate the determination of the board of trustees. On the previous appeal, the attention of this court was focused on a statement in Special Term's opinion sustaining respondent's determination which referred to a history of back strain prior to the claimed line of duty injury. Finding no support in the record for that reference, this court's opinion directed reconsideration by the board of trustees to encompass all medical evidence to date. In retrospect, it appears that language in the opinion could have been misinterpreted as an implicit finding that except for the suggested prior history of back strain, the evidence would not support the determination then reached by respondent. In any event, after a careful examination of the record, we are now satisfied that respondent's determination is adequately supported. It is undisputed that on July 10, 1959, petitioner was injured while on duty when he assisted in carrying a woman, seated in a chair, down three flights of stairs. He reported sick, was diagnosed by his district surgeon as having an acute lumbar sprain and remained on sick leave until August 6, 1959. Petitioner next reported sick as a result of back pain on January 13, 1964. The pain was diagnosed by his district surgeon as a "L-S sprain," and he remained on sick report until January 30, 1964. Again, on November 11, 1968, petitioner was admitted to St. John's Hospital in Smithtown due to "acute back pain," and a few days later was transferred to Syosset Hospital where he was examined further. In the next several years, petitioner was examined by various physicians in connection with his apparently deteriorating back condition. As to the various examinations and tests that were conducted over the years, it seems a fair conclusion that the objective findings were inconclusive. The response of the medical board to the request of the board of trustees for a review of the records is regrettably sketchy, in striking contrast to the very detailed and exhaustive report given by the earlier medical board. Nevertheless, it sufficiently appears that the board was primarily influenced by the significant period of time, without recurrence of the back condition, that elapsed between the line of duty injury in July, 1959 and the onset of back pain in January, 1964. It is true that in the history recorded by one of the doctors who examined the petitioner, he is quoted as having described some minor pains in that intervening period. That claim does not appear in the history given by other doctors who examined him. In any event, the board was clearly entitled to give weight to the circumstance that for a period of some four and one-half years petitioner was able to discharge his duties as a police officer without losing a single day because of his back condition or seeking any medical attention for it. Although not explicitly addressed by

the medical board, it is fair to assume that the board shared the judgment of the earlier medical board that the various tests and examinations described above disclosed no objective findings establishing the claimed causal relationship. As against the medical board's judgment, the record discloses some contrary medical opinion. The police surgeon who examined petitioner on January 13, 1964 believed the "L-S sprain" disclosed by his examination to be related to the earlier injury. In addition, a highly respected neurosurgeon was of the view that it was "unequivocally true" that there was a causal connection between his condition as it developed and the original event. Confronted with a conflict of medical opinion, the board of trustees was clearly entitled to rely upon the unanimous opinion of the members of this medical board, which was in agreement with the unanimous opinion of the members of the first medical board to consider the issue. We are not persuaded that the opinion of the medical board was arbitrary, unreasonable, or unsupported and we find no basis for disturbing the determination of the board of trustees. Concur—Birns, J. P., Sandler, Ross, Bloom and Lynch, JJ.