■ In the Matter of FRANCIS CHRISTIAN, Respondent, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM et al., Appellants. — Judgment, Supreme Court, New York County (Shapiro, J.), entered September 21, 1979, granting petition in an article 78 proceeding to the extent of remanding petitioner's application for accident disability retirement to the New York City Employees'

Retirement System for reconsideration, reversed, on the law, and petition dismissed, without costs. Respondents, New York City Employees' Retirement System (NYCERS) and the City of New York, appeal from a judgment granting a petition in an article 78 proceeding to the extent of remanding petitioner's application for accident disability retirement for reconsideration in accordance with varied specific directions set forth in Special Term's opinion. In substance, Special Term found that the medical board, upon whose recommendation the Board of Trustee of NYCERS relied, failed in a supposed obligation to produce affirmative evidence sufficient to rebut what it considered petitioner's prima facie case that his conceded disability arose from a line of duty accident. We disagree, and accordingly reverse and dismiss the petition. The record adequately supports the medical board's conclusion that petitioner had not sustained his affirmative duty of proof to establish a causal connection. *(Matter of Drayson v Board of Trustees of Police Pension Fund of City of N. Y.,* 37 AD2d 378, 380, affd 32 NY2d 852.) The board of trustees was entitled to rely upon the medical board's recommendation in what was purely a matter of medical judgment. On July 10, 1975, petitioner, a patrolman with the New York City Transit Authority since 1976, was kicked in the head and chest while attempting to effect an arrest. Medical examinations within a few days thereafter disclosed contusions of the scalp and chest, and "ecchymosis of lt. eye." Petitioner was examined on April 28, 1977 by Dr. Alan R. Schankman, an ophthamologist, whose report disclosed the existence of a moderate cataract in the right eye and an incipient cataract in the left. Dr. Schankman concluded that the injury of July 10, 1975 was the competent producing cause for the cataracts. On June 6, 1977, petitioner executed and submitted his application for a line of duty pension. Thereafter on October 25, 1977, he was examined at the request of the Transit Authority by Dr. James Inciardi, a board certified ophthamologist. Dr. Inciardi reported that the characteristics of the cataracts were not consistent with a traumatic cause, but went on to say: "Therefore it is possible for the injury to accelerate or aggravate preexisting cataracts." The medical board denied the line of duty pension application, observing in pertinent part that the medical records did not disclose a severe injury to either eye, that the cataract was more pronounced in the right eye although the ecchymosis had been described as in the left eye, concluding that it was not satisfied that the cataracts were due to the injury alleged. Omitting procedural steps not here pertinent, petitioner thereafter consulted Dr. Carmen Guberina, also an ophthamologist. Dr. Guberina reported that although the cataracts are not "those specific of direct fracture or concussion, it is possible that the accident he suffered in line of duty on July 10, 1975 had caused their development or had accelerated the growth of preexisting cataracts." Petitioner was re-examined by the medical board pursuant to his request for reconsideration and the medical board again denied the line of duty pension application. In its second report the medical board observed that cataracts usually develop slowly, there was no evidence that petitioner did not have cataracts prior to the accident, and that cataracts are found among people in different age groups, including children. In brief, the several reports submitted to the medical board included the following range of opinions: (1) that the cataracts were caused by the line of duty accident; (2) that it was possible that the injury sustained in the incident accelerated or aggravated pre-existing cataracts; and (3) that it was possible that the incident had caused the development of the cataracts or had accelerated the growth of pre-existing cataracts. Obviously implicit in the reports of the latter two specialists was the alternative possibility that the cataracts were wholly unrelated to the incident occurring on July 10, 1975. When these several reports are considered in light of the record as a whole, we are unable to agree with Special Term that the

medical board was arbitrary in its unanimous conclusion that petitioner had not sustained his burden of establishing a causal connection between the incident of July 10, 1975 and the disabling cataracts. Nor do we attach any legal significance under these circumstances to the fact that the members of the medical board were not specialists in ophthamology. Indeed, inherent in the nature and functioning of medical boards is the concept that qualified physicians are able to make an informed medical judgment on the basis of information submitted to them, including the opinions of specialists in areas other than their own. No factual issue was presented with regard to the nature of the event that occurred on July 10, 1975. The sole issue was one of medical judgment as to whether that event was causally connected to petitioner's later discovered disability. On that question, the Board of Trustees of NYCERS was entitled to rely upon the opinion of the medical board. (See *Matter of Drayson v Board of Trustees of Police Pension Fund of City of N. Y.*, 32 NY2d 852, *supra;* see, also, *Matter of Walsh v Codd,* 68 AD2d 805; cf. *Matter of Brady v City of New York,* 22 NY2d 601.) Concur — Birns, J. P., Sandler and Silverman, JJ.

Bloom and Fein, JJ., dissent in a memorandum by Fein, J., as follows: I would modify the judgment remanding petitioner's application for accident disability retirement to the New York City Employees' Retirement System for reconsideration by the medical board to the extent of striking the second, third and fourth decretal paragraphs of said judgment and directing that the medical board consider all available medical evidence including any new medical evidence petitioner or respondents shall wish to submit and to set forth the basis for its conclusions and for rejecting such medical evidence as it shall find not to be in accord with its determination. At issue is whether petitioner's cataracts and the attendant disability arose from a line of duty incident. All of the evidence before the medical board was to the effect that there was a causal relationship. The relevant evidence consisted of the reports of three ophthalmologists. The first report by Dr. Alan R. Schankman, stated: "[t]he line-of-duty injury of 7/10/75 is the competent producing cause for both his cataracts and persistent parietal and occipital pains and that his visual loss and persistant *[sic]* headaches renders him a disabled man." In a later report to the Workers' Compensation Board, also submitted to the medical board, the same doctor stated that the cataract was "caused by * * * head trauma in line of duty injury 7/10/75". The report of Dr. James Inciardi, also a board certified ophthalmologist, stated: "The above mentioned lens opacities are related to the injury only in an aggravating and accelerating sense. The morphological characteristics of the cataracts do not subscribe to those expected of a concussion or other type of traumatic cataract. Therefore it is possible for the injury to accelerate or aggravate pre-existing cataracts." The later report by Dr. Carmen Guberina stated: "Although the cataracts Mr. F. Christian has are not those specific of direct fracture or concussion, it is possible that the accident he suffered in line-of-duty on July 10th, 1975 had caused their development, or has accelerated the growth of pre-existing cataracts." There was no other medical evidence before the medical board when it made either its first or its second determination that the cataracts were not shown to be caused by the line of duty incident. I agree with the majority that the sole issue was one of medical judgment as to whether the incident of July 10, 1975 caused the cataracts or aggravated a pre-existing condition. Under the circumstances, the board's rejection of the line of duty claim was without basis in the record. There is no evidence in the record that the board members, none of whom were ophthalmologists, examined the petitioner. In its decision, the board noted these reports and concluded: "We have no evidence to indicate that Mr. Christian did not already have cataracts prior to the accident. * * * Consequently, for lack of proof that these cataracts were indeed the result of the

accident, we must once again deny this application." It is plain that the board refused to accept the testimony of Dr. Schankman that the cataracts were traumatic in origin and causally related to the July 10, 1975 incident, and rejected the reports of Drs. Inciardi and Guberina that the incident might have aggravated a pre-existing condition. No basis is shown in the board's report for its conclusion. Aggravation of a pre-existing or asymptomatic condition may warrant a line of duty determination *(Kelly v Board of Trustees of Police Pension Fund, Art. II,* 47 AD2d 892). Although the board is not required to determine the cause of the condition *(Matter of Walsh v Codd,* 68 AD2d 805), it does have a duty, as that case indicates, to set forth the basis for rejecting all of the medical evidence before it. *Matter of Drayson v Board of Trustees of Police Pension Fund of City of N.Y.* (37 AD2d 378, affd 32 NY2d 852), relied on by the majority, is not to the contrary. In that case (p 379) the board found that the petitioner suffered from "'an ill defined condition manifested by complaints of pain for which no adequate medical cause has been found'". As this court noted (p 380): "In determining the question of causal relation, the test is the existence of some credible evidence to support the findings of appellant. There is ample evidence of that nature in the present case." On the contrary, in our case there is no evidence to support the findings of the board. There is no doubt that the burden was on the petitioner to establish a disabling condition sustained in the line of duty. It is undisputed that he suffers from cataracts which the board itself found to be disabling. It was also the burden of the petitioner to show that the cataracts were caused or aggravated by the blows he received in the July 10, 1975 incident. All of the medical evidence supports the petitioner. The determination of the board was arbitrary and capricious. Remand is required *(Drayson, supra; Walsh, supra; Matter of Sheehan v Board of Educ.,* 64 AD2d 901). The judgment appealed from should be modified in accordance herewith, and otherwise affirmed, without costs.