■ In the Matter of WILLIAM TOBIN, Appellant, v NORMAN STEISEL, as Commissioner of the Department of Sanitation, et al., Respondents. — Judgment, Supreme Court, New York County (Kenneth Shorter, J.), entered April 20, 1983, dismissing the petition brought to annul and vacate the denial of petitioner's application for accident disability benefits, affirmed, without costs or disbursements. We agree with the disposition at Special Term that respondents' denial of petitioner's application for accident disability retirement was neither arbitrary nor capricious. The record supports the determination, in part based upon the opinion of Dr. Flegenheimer, that at most, the incident was a precipitating factor but was not causally related to petitioner's psychiatric condition. The distinction hardly amounts to a mere "exercise in semantics", as is suggested by the dissent. While there was no proof that the psychiatric condition existed prior to the line-of-duty incident, the burden was upon petitioner to sufficiently establish a causal connection between the

accident and the disability (*Matter of Drayson v Board of Trustees,* 37 AD2d 378, affd 32 NY2d 852). At best, there was conflicting medical evidence adduced and, under such circumstances, the board of trustees was entitled to rely upon the medical opinion of the medical board (*Matter of Christian v New York City Employees' Retirement System,* 56 NY2d 841, affg 83 AD2d 507; *Matter of Scotto v Board of Trustees,* 54 NY2d 918, affg 76 AD2d 774). Inasmuch as the record reflects that the medical board carefully considered the application and all medical evidence before reaching its determination, we find no basis on this record to warrant a remand for further consideration. The board was not required to determine the cause of petitioner's psychiatric disability (*Matter of Bombacie v Board of Trustees,* 74 AD2d 530; *Matter of Walsh v Codd,* 68 AD2d 805). Nor was petitioner entitled to an adversary hearing in the proceeding before the board of trustees (*Matter of Meschino v Lowery,* 31 NY2d 772, 774-775). Concur — Ross, J. P., Silverman, Lynch and Kassal, JJ.

Milonas, J., dissents in a memorandum as follows: Petitioner-appellant, a stationary fireman with the New York City Department of Sanitation since November of 1964, was at work performing his duties at the Betts Avenue incinerator in Woodside, New York, when an explosion occurred on March 16, 1981, allegedly causing him to fall and strike his head. Although no one else was hurt and the incinerator itself was not damaged, petitioner was admitted to St. John's Hospital for treatment of his injuries. According to the hospital record, he was suffering from "earache and vertigo following explosion, stuffy feeling in ears." Except for a period of approximately one week, petitioner thereafter remained on sick leave from his job. He sought medical attention from a series of doctors. Dr. R. Richard Leinhardt, who examined petitioner on March 24, 1981, diagnosed a "Bilateral Sensorineural Hearing Loss characteristic of Acoustic Trauma." On April 12, 1981, Dr. Stieglmain issued a report stating that petitioner had "Acoustic trauma and Post-traumatic headaches". Dr. Albert M. Tapper of the La Guardia Medical Group found on April 15, 1981 that petitioner had a "Bilateral Sensorineural Hearing Loss", as well as a "Post-Concussion Syndrome". On April 16, 1981, Dr. Myles Mittleman's evaluation was that petitioner had sustained "Acoustic Trauma". On April 21, 1981, Dr. Leinhardt repeated his previous diagnosis. In three reports dated April 22, 1981, May 22, 1981 and June 24, 1981, Dr. F. J. De Stefano concluded that petitioner was suffering from "Cerebral Concussion" and "Post Concussion Syndrome". Another physician, Dr. Cesar R. Bariso, determined on April 24, 1981 that he "absolutely requires otologic attention soon", and on May 20, 1981, Dr. Sam Fineman found that petitioner had "Post Traumatic Dizziness". Dr. Henry Singer indicated on June 30, 1981 that petitioner's condition was one of "Traumatic Acoustic Trauma". On June 19, 1981, petitioner applied for accidental disability retirement. In support of his request, he submitted reports from Drs. Singer and De Stefano, both of whom asserted that his medical problem was caused by the accident of March 16, 1981. Petitioner, in describing the incident, claimed that "I was working between two incinerator units and there was an explosion near my head", resulting in concussion, loss of hearing and dizziness. A psychiatrist, Dr. Remo R. Cerulli, examined petitioner on October 15, 1981 and, in a report dated October 21, 1981, rendered the following opinion: "Reactive depression — traumatic neurosis with anxiety and probably a phobic state, moderate. No psychosis. His mental illness is of functional nonpsychotic type — traumatic neurosis with depression — which is causally related to the accident of March 16, 1981. He is totally and permanently disabled on psychiatric cause." Dr. Cerulli again evaluated petitioner on November 19, 1981, at which time he wrote to the Workers' Compensation Board that the latter "still complains of dizziness and imbal-

ance and the fear of falling. Moreover, he complains of tinnitus and sounds in the ears which could be a psychophysiological reaction due to the anxiety syndrome — if the medication, Aspirin, etc., is not the cause." On December 29, 1981, two members of the medical board examined petitioner on behalf of the New York City Employees' Retirement System. The report by the medical board noted that an audiogram performed on him reflected "high frequency loss of hearing in the four to six thousand Hz." It also referred to the fact that petitioner stated that he had never experienced any hearing difficulty (presumably prior to the accident in question) and that he described a sensation of turning during which he might or might not fall to the floor. This sensation was occasionally accompanied by nausea but not vomiting and because of these symptoms he was suffering from depression. The report observed that although petitioner's gait and stance were normal, "he came in a wheelchair because, he says, he feels insecure and does not know when an episode of falling may occur." Apart from the positive audiogram, no other tests administered to petitioner disclosed any abnormality. While the board found no objective evidence that the explosion did, in fact, produce the symptoms of which petitioner complained, it also determined that "[a]s far as we can tell, he was physically and psychologically well until this event occurred." Accordingly, the board suggested that another psychiatric opinion, in this instance by Dr. Walter V. Flegenheimer, be procured. Two questions were posed by the board to Dr. Flegenheimer: (1) Is petitioner disabled? (2) Can his disability be related to the alleged incident? When petitioner appeared for his examination on March 4, 1982, he was in a wheelchair and remained in the wheelchair for the entire visit. Towards the end of the interview, there was a brief period during which he seemed to be in acute distress. It was petitioner's contention that he was undergoing an episode of dizziness. In the view of Dr. Flegenheimer: "It is difficult to make a definitive diagnosis. The various somatic symptoms and the unconcerned affect [sic] point toward hysteria but there is not sufficient information about the psychodynamic meaning of the symptoms or of the secondary gain involved to make a certain diagnosis. This patient does *not* meet the criteria for a post-traumatic distress disorder. The stress was not of such severity to produce this syndrome, nor are the patient's symptoms characteristic. I feel conscious malingering is unlikely in this patient. Recommendation: This patient is obviously disabled and unable to work at his usual occupation. While the symptoms are temporally related to the accident, the accident itself was not sufficient to explain the origins of the symptoms, i.e., in my opinion, the accident was at most a precipitating event, not a causal one. The prognosis is poor." Based upon Dr. Flegenheimer's report, the medical board recommended that petitioner's application for accident disability be disapproved. It proceeded to note, however, that should he request ordinary retirement, the board "will approve same with a diagnosis of chronic anxiety neurosis." The board also decided that "satisfactory correlation between the incident claimed to be the causal event and the disabling symptoms has not been established." Subsequently, the Board of Trustees of the New York City Employees' Retirement System denied petitioner's application for accident disability but granted him an ordinary disability retirement. He thereupon commenced the instant proceeding pursuant to CPLR article 78 and, following dismissal of his petition by Special Term, he appealed to this court. It is his contention that the medical proof regarding his psychiatric condition sufficiently established that his disability is causally related to the accident of March 16, 1981. Section B3-40.0 of the Administrative Code of the City of New York requires that in order to be eligible for accident disability retirement, an applicant must be physically or mentally incapacitated for the performance of city service as a natural and proximate result of an accidental injury received

in the line of duty. In that connection, the applicant has the burden of demonstrating that the alleged disability is causally related to the accident at issue. (*Matter of Bombacie v Board of Trustees,* 74 AD2d 530; *Matter of Drayson v Board of Trustees,* 37 AD2d 378, affd 32 NY2d 852.) In determining the question of causal relationship, "the test is the existence of some credible evidence" to support the administrative finding. (*Matter of Drayson v Board of Trustees,* 37 AD2d, at p 380.) Moreover, when there is a conflict in medical opinion, the board of trustees is clearly entitled to rely upon the informed judgment of its medical board and reject the evaluation made by petitioner's physicians. (*Matter of Scotto v Board of Trustees,* 76 AD2d 774, affd 54 NY2d 918; see, also, *Matter of Christian v New York City Employees' Retirement System,* 83 AD2d 507, affd 56 NY2d 841.) Yet, it is precisely because the court's power to review administrative decisions is so limited that bodies such as the board of trustees have a special responsibility to act fairly and appropriately and base their findings on the credible evidence before them. While the record in the present situation does indicate that the medical board carefully considered petitioner's evidence, the board's ultimate determination is perplexing. According to the board, insofar as it could ascertain, petitioner was perfectly well, both physically and psychologically, until the explosion. Dr. Flegenheimer, to whom the matter was referred for an additional evaluation, stated that he found it difficult to make a definitive diagnosis. Thus, he did not really disagree with the medical evidence submitted on petitioner's behalf. He acknowledged that the patient was obviously disabled and unable to work at his usual occupation and that the symptoms complained of were related to the accident, but then he went on to speculate that the incident was at most a precipitating event rather than a causal one. This distinction between "precipitating" and "causal" appears to be merely an exercise in semantics. Considering the fact that the record discloses, and the medical board concedes, that there is absolutely no proof that the medical condition involved here predated the accident, I fail to perceive how petitioner qualifies for ordinary disability retirement but not for accident disability retirement. (See *Matter of Ahrendt v McGuire,* 82 AD2d 787; *Matter of Giannino v Lang,* 52 AD2d 539, wherein this court remanded for further proceedings cases in which it found no indication of any pre-existing injury such as would support the administrative denial of accident disability retirement.) Under the circumstances, I believe that the judgment of Special Term should be reversed and the petition granted to the extent of remanding this matter for respondents to further clarify and consider their determination.